Argued February 2; affirmed February 23, 1938

# SHELLEY *v.* PORTLAND TUG & BARGE CO.

(76 P. (2d) 477)

Department 2.

*K. C. Tanner*, of Portland (Green, Tanner & Boesen, of Portland, on the brief), for appellant.

*L. W. O'Rourke*, of Portland, for respondent.

RAND, J.   The plaintiff, a former employee of the defendant corporation, brought this action to recover a balance claimed to be due him for overtime and subsistence while in its employ.

The defendant is engaged in the business of transferring merchandise to and from vessels in the Portland harbor by means of lighters, and, for several years, the plaintiff was employed as captain of one of its lighters under a contract which required the defendant to pay to plaintiff and the plaintiff to receive as full compensation for his services the sum of $150 per month, and this contract has been completely performed by the defendant. On December 9, 1934, the plaintiff quit work and thereby terminated his contract and on December 20, 1934, the defendant paid to the plaintiff the balance due under said contract by a check on the face of which was written the words, "paid in full to December 20, 1934", and, with this notation written thereon, the plaintiff indorsed and cashed the check.

On June 11, 1934, the defendant entered into a written contract with the Columbia River Association, Local No. 17, of the Masters, Mates and Pilots of America, which, for brevity, will hereinafter be referred to as Local No. 17. Under and by the terms of said contract, the defendant agreed with Local No. 17, under certain conditions as prescribed in the contract, to pay to its employees for overtime and subsistence, and plaintiff bases his right to recover the balance sued for upon said contract.

While testifying in his own behalf, the plaintiff admitted that the contract under which he was employed

continued in force and without any change being made in its terms during the time of his employment. The plaintiff also admitted that he first became a member of Local No. 17 on January 1, 1935, some three weeks after he had quit work for the defendant.

The contract of June 11, 1934, terminated at the expiration of one year and it was not renewed. The evidence shows, and it is undisputed, that on June 11, 1934, when said contract was entered into and thereafter during the life of said contract, no employee of the defendant company was a member of said union and, for that and other reasons which will later be stated, the defendant contends that the contract is not enforceable by the plaintiff, while the plaintiff contends that he was a beneficiary under said contract and the fact of his non-membership does not deprive him of the right to enforce the contract. In support of this contention, the plaintiff cites *Yazoo & M. V. R. Co. v. Webb,* 64 F. (2d) 902. In that case, one of the questions involved was whether the plaintiff, a colored man who had worked in various capacities for the railroad for many years and who was not a member of the Brotherhood of Railway Trainmen, was entitled to recover the difference between the compensation which he had received for his services and what he would have been entitled to receive for the same services if he had been a member of the union under its contract with his employer. It was contended on the part of the railroad company that, since Webb was not a member of the union, the contract had no application to him. In denying this contention, the court, among other things, said:

"An agreement upon wages and working conditions between the managers of an industry and its employees, whether made in an atmosphere of peace or under the

stress of strike or lockout resembles in many ways a treaty. As a safeguard of social peace it ought to be construed not narrowly and technically but broadly and so as to accomplish its evident aims and ought on both sides to be kept faithfully and without subterfuge. In no other way can confidence and industrial harmony be sustained. But in itself it can rarely be a subject of court action because it is incomplete. It establishes no concrete contract between the employer and any employee. No one is bound thereby to serve, and the employer is not bound to hire any particular person. It is only an agreement as to the terms on which contracts of employment may be satisfactorily made and carried out. It is a mutual general offer to be closed by specific acceptances. When negotiated by representatives of an organization it is called collective bargaining, but ordinarily the laws of the organization, which constitute the authority of the representatives to act, do not require the individual members to serve under it, but only that if they serve they will do so under its terms and will join in maintaining them as applied to others. When the agreement is published by the managers, it becomes until abrogated the rule of that industry and any individual who thereafter continues in its employment or takes new employment takes it on the terms thereby fixed. Ordinarily, as in this case, there is no period fixed for the hiring and they are at the will of the parties, the employer having the right to discharge at any time and the employee having the right to quit. But the employment though indefinite as to time is a relationship while it lasts, and is subject to the conditions fixed in the working agreement for the industry. Thus a worker cannot be discharged for causes prohibited by the agreement or without a hearing if that is provided, and the agreed seniorities must be observed in promoting, laying off, or reemploying men. This is plain as to all members who were represented in making the agreement, but it is said that nonmembers because they have not authorized its making are not bound, and consequently have no protection under it. In the mere mak-

ing of the agreement this is true, but when it is not by its terms confined to members but purports to cover all employees in the industry of the classes dealt with and is thus published by the employer, nonmembers who continue in the employment or who afterwards enter it accept and adopt the agreement, and are through the adoption as fully bound and protected by it as is any one else. When, however, the agreement purports to be limited to certain classes of employees, it has no application to employees of another class unless it be specially adopted in hiring them. When, therefore, an employee brings into court a case concerning his individual rights under such an agreement a question may be raised whether his employment comes under it. (Citing authorities). * * *

"Applying all this to Webb, he is not excluded by being a colored or a nonunion man. The generality of the agreement published as the rule of the railroad enables him to adopt it by his continued employment so far as his employment comes under it."

██ That that case is distinguishable from the instant case in many important particulars is obvious. There the Brotherhood, in making its contract with the railroad company, had authority to act for its own members. As to them the relation of principal and agent existed. In the instant case no employee of the defendant was a member of Local No. 17. Therefore, that organization had no authority to act for defendant's employees and, therefore, plaintiff's right to sue the defendant under the contract cannot be sustained upon the ground of agency, for, as said by Professor Williston:

"The right of a third person benefited by a contract to sue upon it has some times been defended upon the ground that the promisee was the agent of the third person. But the existence of an agency is a question of fact. It cannot be assumed as a convenient piece of machinery when in fact there was no agency."

1 Williston on Contracts, sec. 352.

Another important distinction between the Yazoo case and the instant case is this: the railroad company ·in that case had published and held out to its employees that the terms of its contract with the Brotherhood were included in and made a part of the contract under which they were to work. There was no such publication or holding out in the instant case.

In *Piercy v. Louisville & N. R. Co.*, 198 Ky. 477 (248 S. W. 1042, 33 A. L. R. 322), the question was whether the railroad company, against the objection of the plaintiff, could, at the request of the order of railroad conductors of which the plaintiff was a member, deprive the plaintiff of one of his seniority rights by transferring him from a desirable daylight run to a night run. In denying the existence of such a power on the part of the order, the court, among other things, said:

"The primary purpose in the organization of labor unions and kindred organizations is to protect their individual members, and to secure for them a fair and just remuneration for their labor and favorable conditions under which to perform it. Their agreements with employers look always to the securing of some right or privilege for their individual members, and the right or privilege so secured by agreement is the individual right of the individual member, and such organization can no more, by its arbitrary act, deprive that individual member of his right so secured, than can any other person. The organization is not the agent of the member for the purpose of waiving any personal right he may have, but is only his representative for the limited purpose of securing for him, together with all other members, fair and just wages and good working conditions. [Citing authorities.]"

In *Gregg v. Starks*, 188 Ky. 834 (224 S. W. 459), which was a suit for an injunction, the plaintiff was not

a member of the union which had contracted with the railroad company but he was held to be entitled to an injunction. Upon the question of his not being a member of the union, the court said:

"Mr. Turner, assistant superintendent of transportation for the company, testified that Gregg was an employe of the company, working under the same kind of contract as the one filed by him, which is not denied by any witness, and the mere fact that the contract was negotiated between the railroad company and an organization representing a part of its conductors cannot exclude other conductors not members of the organization from its benefits, when the nonmember conductors and the railroad company recognized and treated it as the contract under which the services of such conductors were rendered and accepted."

In *West v. Baltimore & Ohio Railroad Company,* 103 W. Va. 417 (137 S. E. 654), the court said:

"And the rule seems to be that individual members of a labor union are not bound by contracts between the union and employers, unless such agreements are ratified by the members of the union as individuals, and that in the absence of evidence of such ratification by a member, no rights accrue to him which he can enforce against the employer."

In *Burnetta v. Marceline Coal Co.,* 180 Mo. 241 (79 S. W. 136), where the plaintiff was a member of the union and was suing on a contract betwen his employer and his own union, the court said:

"A contract on the part of an individual that he will perform certain work under the rules of an organization is not to be inferred from the simple fact that he is a member of the organization. Persons work for themselves, and are free and independent. Agreements imposing conditions can only be enforced when the entire proposition has been stated and by them freely accepted."

The above quotation in the Burnetta case was quoted with approval in *Hudson v. Cincinnati, N. O. & T. P. R. Co.*, 152 Ky. 711 (154 S. W. 47, 45 L. R. A. (N. S.) 184, Ann. Cas. 1915B, 98), following which the court said:

"In 24 Cyc. 824, the author states the rule as follows: 'A labor union ordinarily has no authority to make a contract with employers of its members in respect to the performance of work and the payment for it. In order to bind the individual members, they must expressly assent to the terms of the contract. Such assent will not be implied from the fact that they have knowledge at the time of the contract. It cannot maintain an action to enforce a contract made by it on behalf of its members. Nor is it liable to suit on such a contract, which is enforceable only against the individual members who are guilty of a breach of it. An individual member of a labor union, not being bound by the terms of the contract made between the union and its employers as to the time of payment of his wages, has a right to sue therefor on the completion of his work, in the absence of any express contract with him.' "

In the very able opinion by Paine, J., in *Rentschler v. Missouri P. R. Co.*, 126 Neb. 493 (253 N. W. 694, 95 A. L. R. 1), which was decided on March 23, 1934, the authorities bearing upon this question are collected with great industry and discussed by the court. In that case the action was brought against the railroad company by a member of the Brotherhood of Maintenance of Way Employees to recover damages for a claimed violation of a written agreement between the railroad company and the brotherhood to which he belonged, in which the plaintiff claimed that his seniority rights had been disregarded. The court defined the terms "collective labor agreement" and "trade agreement" as "a term used to describe a bargaining agreement entered into by a

group of employees, usually organized into a brotherhood or union, on one side, and a group of employers, or a corporation, as a railroad company, on the other side''. The court then stated that such agreement may be a brief statement of hours of labor and wages or, on the other hand, it may regulate, in the greatest minuteness, every condition under which labor is to be performed; in fact, the term ''contract'' was rarely applied to them because, the majority of unions being unincorporated, they could not be competent parties to a contract. The court further stated that no two of such agreements are alike, yet their purpose was, in general, to regulate hours of work and wages to be paid, with the right reserved in the members of the union while protected on these questions, to stop work at pleasure. The court then said:

''But in the following examination of cases it will be found that in the last 20 years an increasing number of cases have been brought before our courts, a few by brotherhoods, not as many by employers' organizations, but the great majority of cases have been brought by the individual employee. Relief has been refused when the employee was a member of the union, and the collective agreement was made a part of his individual labor contract. On the other hand, relief has been granted when an employee was a member of the union, and the collective agreement was, upon the slightest of evidence, considered as adopted into the individual's contract. The only conclusion is that the decisions of our courts are in hopeless conflict, but the questions involved are so important, and the issues at stake so vital, that courts must not shirk the responsibility of a painstaking research of all the facts and law in each case presented to them.''

The point of that case, so far as it relates to the question involved here, we think is contained in the following sentence: ''On the other hand, relief has

been granted when an employee was a member of the union, and the collective agreement was, upon the slightest of evidence, considered as adopted into the individual's contract." On page 10, of said volume, will be found the annotations on this question.

■ There is not the slightest evidence that the agreement in question here was ever considered by anyone as a part of the contract under which the plaintiff had been employed by the defendant and, therefore, we think that none of the cases cited support plaintiff's contention.

■ We think also that this agreement between the union and the defendant conferred no right of action upon the plaintiff for the reason that it is not supported by a sufficient consideration. It not being under seal, it must be based upon a valuable consideration which seems to be wholly lacking in this agreement. The consideration stated in the agreement is as follows:

"Section 7. Should there *by* (be) any dispute which cannot be adjusted between the parties hereto as to the interpretation of any of the clauses of this agreement, the men shall continue to work as per the conditions existing prior to the time the dispute arose, and such dispute shall be referred to a Committee consisting of seven members; three representatives of the Employees, three representatives of the Employers, and a disinterested seventh member who will act as a Chairman selected by the other six. Such Committee shall sit without any unnecessary delay and a majority decision shall be final and binding on both parties."

■ According to 1 Page on Contracts (2d Ed.), section 514, a valuable consideration consists of the accrual to one party of some right, interest, profit or benefit or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other. On this point, see *Butson v. Misz*, 81 Or. 607 (160 P. 530). In de-

fining what constitutes a benefit or a detriment within the meaning of the section just referred to, Page says:

" 'Benefit', as used in this rule, means that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled. 'Detriment' means that the promisee has, in return for the promise, forborn some legal right which he would otherwise have been entitled to exercise."

It is plain that, under the agreement in question, since the relation of principal and agent did not exist between Local No. 17 and any of the defendant's employees, the union had no power to carry out any of its promises and, therefore, the defendant received nothing in return for its promise and, for the same reason, Local No. 17 suffered no detriment from the making of the agreement and, therefore, there was no consideration for the promise made by either of the parties in said agreement. As pointed out in 1 Williston on Contracts, section 111, consideration is a present exchange for a promise and, if there be no legal consideration, no motive such as fear of trouble will support a promise.

Moreover, the undisputed evidence shows that on December 12, 1934, the plaintiff, after having quit work and before receiving a check for the balance then due him under his contract with the defendant, demanded of the defendant that he be paid for overtime and subsistence, and that the defendant denied that the plaintiff was entitled to be paid therefor in any sum whatsoever and refused to pay the same. The undisputed evidence further shows that thereafter and on December 20, 1934, plaintiff accepted defendant's check which included the balance due him under his contract of employment and the additional sum of $5, and on the face of the check appeared the notation: "Paid in full to December 20, 1934", and that, with knowledge that

said notation appeared on the face of the check, plaintiff indorsed and cashed it. This amounted to a complete accord and satisfaction. The rule applicable to this transaction is well stated in the Yazoo case, *supra*, upon which the plaintiff relies. The court there said:

"* * * There was but a single employment and one wage due. Its measure was in dispute. 'The rule is well established that where the facts show clearly a certain sum to be due from one person to another, a release of the entire sum upon payment of a part is without consideration, and the creditor may still sue and recover the residue. If there be a bona fide dispute as to the amount due, such dispute may be the subject of a compromise and payment of a certain sum as a satisfaction of the entire claim, but where the larger sum is admitted to be due, or the circumstances of the case show that there was no good reason to doubt that it was due, the release of the whole upon payment of part will not be considered as a compromise, but will be treated as without consideration and void.' (Citing authorities.)"

To the same effect see Brady on Bank Checks (2d Ed.), p. 25. The judgment appealed from is, therefore, affirmed.

BEAN, C. J., and BAILEY and LUSK, JJ., concur.