DICKIE,
*Respondent,*

*v.*

DICKIE et al,
*Appellants.*

(86-9-239; CA A47228)

769 P2d 225

Phil M. Kelley, Portland, argued the cause for appellants. With him on the briefs were Roscoe C. Nelson, Jr., Portland, and Nelson & Kelley, Portland.

Charles J. McClure, Tigard, argued the cause for respondent. With him on the brief was McClure & Schwab, Tigard.

Before Graber, Presiding Judge, and Riggs and Edmonds,* Judges.

GRABER, P. J.

* Edmonds, J., *vice* Warden, J., retired.

**GRABER, P. J.**

George Dickie, Jr. (George, Jr.) and Delores Dickie (Delores) appeal from a judgment in favor of George Jr.'s son, George Dickie, III (George III). They claim that the trial court erred in finding that George III gave George, Jr. consideration to support their contract to make a will and in enforcing that contract during the life of George, Jr.[1] We affirm.

In 1974, George Dickie, Sr. (George, Sr.) sold real property in Sandy (the Sandy property) to George, Jr. and his wife Gertrude. In 1975, George, Jr. and Gertrude were divorced. The dissolution judgment gave George, Jr. a life estate in the Sandy property and George III and Gertrude each a one-quarter remainder interest.[2] In 1976, George, Jr. bought Gertrude's one-quarter remainder. Also in 1976, George, Jr. obtained George III's interest by "arranging" to have George, Sr. cancel part of a debt that George III owed to George, Sr. and agreeing to leave the Sandy property to George III in his will. In exchange, George III gave George, Jr. a quitclaim deed to the Sandy property. On the same day, George, Jr. and George III entered a contract to make a will, which provided that, in exchange for the quitclaim deed, George, Jr. would devise the Sandy property to George III.[3] George, Jr. executed a will in accordance with the contract. However, in 1981, he revoked that will and conveyed the Sandy property to himself and his new wife, Delores. In 1985, George, Jr. and Delores sold the property to the Bonds, who purchased it without notice of the prior dealings among the Dickies.

---

[1] Appellants' brief does not comply with ORAP 7.19, in that it sets forth arguments not assigned as error. We decline to exercise our discretion to strike appellant's brief, ORAP 7.19(6), but we address only those rulings properly assigned as error.

[2] The other one-half remainder interest presumably belonged to George, Jr., to be disposed of as he chose.

[3] The contract provided:

"I, GEORGE LAIRD DICKIE, JR., do hereby agree to make a will, leaving my son, GEORGE LAIRD DICKIE, III., my land located on the Sandy River and described in that certain Decree of Dissolution of Marriage between Gertrude Dickie and myself, the Department of Domestic Relations, Circuit Court, Multnomah County, No. 411-749. My Will will leave to him the land but will exclude from that gift the mobile home I am now using as my home together with my wife, or any substitute mobile home I may place on the land.

"The consideration which I received for my promise to make a Will and not revoke said Will, or change it in so far as the provision giving land to my son, is that my son has agreed to quitclaim all interest which he presently has in the land which he acquired as a result of the above mentioned court decree."

George III brought an action for breach of contract and asked the court to impose a constructive trust on the note and trust deed from the Bonds to George, Jr. and Delores. The court gave George III a judgment of approximately $40,000 and imposed a constructive trust on the note and trust deed.[4]

■ In their first assignment of error, George, Jr. and Delores argue that there was no consideration to support the contract.

"[C]onsideration consists of the accrual to one party of some right, interest, profit, or benefit or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Shelley v. Portland Tug & Barge Co.,* 158 Or 377, 387, 76 P2d 477 (1938).

As the contract recites, George III gave George, Jr. a greater interest in the property than he had before, in exchange for which George, Jr. executed the contract at issue. *See* n 3, *supra.* Thus, there was mutual consideration.

■ In their second assignment of error, George, Jr. and Delores assert that the trial court erred in holding that a contract to make a will is enforceable during the life of the testator. They rely on *Ellinwood and Ellinwood,* 59 Or App 536, 651 P2d 190 (1982), *rev den* 294 Or 460 (1983). There, a husband and wife signed a contract in which the husband agreed to leave all his property to the wife *if she should survive him.* 59 Or App at 538. The parties later were divorced. On appeal the husband argued that the trial court erred in failing to take the value of the contract to make a will into account in setting spousal support. We noted that

"the agreement did not refer to specific property to be devised or bequeathed, nor did it contain any express restrictions on the ability of husband to dispose of assets prior to his death. The majority of jurisdictions do not specifically enforce such contracts during the testator's life in the absence of specific

---

[4] The first paragraph of the judgment awards George III a money judgment against George, Jr. The second paragraph cancels any interest of Delores in the property. The third paragraph imposes the constructive trust and provides:

"That defendant GEORGE LAIRD DICKIE, JR. shall convey to plaintiff all his interest in the note and trust deed on the real property described in paragraph 2 [the Sandy property], towards satisfaction of the judgment in the sum equal to the principle amount of the note on the date of conveyance, and title to that real property. If defendant GEORGE LAIRD DICKIE, JR. shall fail to do so within 30 days from the date hereof, this decree shall effect those transfers."

devises or bequests or restrictions on the promisors power to dispose of assets." 59 Or App at 540. (Citations omitted.)

We then held that, because the value of the wife's *potential* future interest under the contract was uncertain, the trial court did not err in failing to take it into account in setting spousal support. 59 Or App at 541.

*Ellinwood* is inapposite, because the contract in this case refers to specific property. The contract unambiguously required that George, Jr. devise the Sandy property to George III. Necessarily implied in George, Jr.'s "promise to make a Will and not revoke said Will, or change it in so far as the provision giving [the Sandy property] to my son [George III]" was George, Jr.'s present promise to retain ownership of the Sandy property. By selling the property, George, Jr. breached that current agreement and anticipatorily breached his agreement to devise the property to his son. *See Ind. Leasing v. Roberts Myrtlewood,* 240 Or 577, 580, 401 P2d 698 (1965). Accordingly, we hold that, under these facts, an action for breach of a contract may be brought during the life of the "testator."[5] *See* Sparks, *Contracts to Make Wills* 73 (1956); 79 Am Jur 2d, "Wills," § 343, 516.

George, Jr. and Delores also contend that ORS 112.270(1) prohibits enforcement of a contract to make a will during the life of the testator. ORS 112.170(1) provides:

"A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, executed after January 1, 1974, shall be established only by:

"(a)   Provisions of a will stating material provisions of the contract;

"(b)   An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or

"(c)   A writing signed by the decedent evidencing the contract."

The use of the word "decedent" instead of the word "testator," they argue, shows that the person to be held to the contract must have died. Even assuming that the contract here is

---

[5] We need not, and do not, decide whether an action for breach would lie if George, Jr. had committed waste or other acts in derogation of George III's interest in the property. We hold only that, when the promisor in a contract to devise specified real property sells it instead, the promisee may sue for breach of contract.

merely a contract to make a will and nothing more, we disagree. The statute establishes several alternative *means* of proving a contract; it does not limit *when* the contract can be enforced. The evidence here met the statutory requirements.

Affirmed.