Argued and submitted December 13, 2002, reversed and remanded April 3, 2003

Janice Louise COMPTON,
*Appellant,*

*v.*

Ronald Lee COMPTON,
*Respondent.*

C000745CV; A116533

66 P3d 572

Vincent James Bernabei argued the cause and filed the brief for appellant.

David N. Hobson, Jr., argued the cause for respondent. With him on the brief was Hobson & Angell, LLP.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff brought this action to recover money that defendant agreed to pay for support of defendant's granddaughter, Amy. Plaintiff and defendant are Amy's legal guardians. The trial court granted summary judgment to defendant on the ground that the agreement violated public policy. ORCP 47. We reverse.

The relevant facts are undisputed. In 1991, while plaintiff and defendant were married, they became the joint legal guardians of Amy, who thereafter lived with them. In 1998, plaintiff's and defendant's marriage was dissolved. On February 3, 1998, during the process of the dissolution, they entered into a "Guardianship Agreement" (the agreement) concerning Amy's future care. They did not present the agreement to either the dissolution or the guardianship court for its approval. The agreement is the legal basis for plaintiff's claims in this case.

In the agreement, plaintiff and defendant stated that it was in Amy's best interests that they continue as joint guardians, that she live with plaintiff permanently and visit with defendant, and that it would be detrimental for her to be returned to the custody of her natural parents or any member of either of their families. They then agreed that she would live with plaintiff permanently and that defendant would have liberal and unrestricted visitation at mutually agreed times. The agreement contains extensive provisions for Amy's support. The essential section provides that the "parties shall be jointly and severally liable for Amy's care, maintenance and support." The agreement then requires defendant to pay all expenses associated with the residence where plaintiff and Amy lived at the time of the agreement. It also requires defendant, beginning March 1, 1999, or approximately one year after the agreement, to pay plaintiff $425 per month until Amy turns 18, completes high school, marries, is emancipated, or no longer lives with plaintiff, whichever comes first. The parties further agreed that defendant would pay 75 percent of any uninsured medical expenses and that plaintiff would pay 25 percent.[1] Because of her agreement to

---

[1] The agreement contains additional provisions concerning the continuation of the joint guardianship, arbitration of disputes over changes of circumstances, and other matters that are not relevant to the view that we take of the case.

be jointly and severally liable for Amy's support, plaintiff agreed to be responsible for any other expenses.

Plaintiff filed this case in March 2000, alleging that defendant had not made any of the required payments since June 1999 and that he had indicated that he did not intend to make any future payments. She sought damages of $34,000 as "the entire amount of the unpaid contractual amount."[2] In response, defendant admitted that he was delinquent under the agreement but denied that the unpaid contractual amount of $34,000 was due and owing. As an affirmative defense, he alleged that the agreement was void as violating public policy on the ground that neither a guardian nor a grandparent has a legal obligation to support a ward or grandchild and that private contracts imposing such an obligation would deter unrelated parties from assisting minors in need. He thereafter moved for summary judgment on that defense, arguing in essence that the agreement was an attempt to remove the issue of Amy's custody and her best interests from the courts in violation of the relevant statutes. The trial court grudgingly agreed that the agreement was unenforceable; it granted defendant's motion and thereafter entered judgment for him.[3]

■　　"If the consideration for the contract or its agreed purpose is illegal or against public policy on its face, it will not be enforced." *Hendrix v. McKee*, 281 Or 123, 128, 575 P2d 134 (1978). "Such a public policy may be found in legislative enactments, administrative regulations, even in the constitution[.]" *A-1 Sandblasting v. Baiden*, 293 Or 17, 22, 643 P2d 1260 (1982). On appeal, defendant points out that a guardian has no legal obligation to support a minor beyond the support that the minor's estate can provide, ORS 125.315(1)(e), and argues that the agreement is an attempt to impose an obligation of support on defendant in exchange for access to Amy. Such an agreement, according to defendant, violates the public policy that makes custody and visitation matters for the court to decide. He also argues that, because the agreement

---

[2] It is not clear how plaintiff calculated that amount.

[3] The original judgment did not dispose of defendant's counterclaims. After we granted the trial court leave under ORS 19.270(4) to enter an appealable judgment, it entered a stipulated judgment dismissing them. Plaintiff thereafter filed a notice of intent to proceed with the appeal.

states that it is "in consideration of the mutual promises and covenants," the various provisions are not severable for the purposes of determining the legality of the agreement.

We consider first defendant's contention that the parties' contract is illegal. Defendant relies on ORS chapter 107 (statutes governing marital dissolution, annulment and separation), ORS chapter 109 (statutes governing parent and child rights and relationships), and ORS chapter 125 (statutes governing guardianships of wards). In *Uhlmann v. Kin Daw*, 97 Or 681, 689-90, 193 P 435 (1920), the Supreme Court explained the controlling principles of law concerning whether an agreement is void because it is made in violation of statute:

> "An agreement is illegal if it is contrary to law, morality or public policy: 6 R.C.L. 693. Plain examples of illegality are found in agreements made in violation of some statute; and, stating the rule broadly, an agreement is illegal if it violates a statute or cannot be performed without violating a statute.
>
> "* * * * *
>
> "The rule that an agreement is illegal and unenforceable if it conflicts with the provisions of a statute is not inexorable and unbending. * * * The inquiry is as to the legislative intent, and that may be ascertained, not only by an examination of the express terms of the statute, but it may also be implied from the several provisions of the enactment. Of course, if a statute expressly declares that an agreement made in contravention of it is void, then the inquiry is at an end; but, in the absence of such a declaration, the court may take the statute by its four corners and carefully consider the terms of the statute, its object, the evil it was enacted to remedy, and the effect of holding agreements in violation of it void, for the purpose of ascertaining whether it was the legislative intent to make such agreements void * * *."

None of the cited statutes expressly prohibits the parties' agreement to provide for Amy's support. Because the parties are not her natural parents, ORS chapters 107 and 109 are inapplicable. However, because the parties are her legal guardians, ORS 125.300 to 125.330 are applicable. In particular, ORS 125.315 provides for the general powers and

duties of guardians. Those powers and duties include exercising custody over the protected person, establishing the protected person's place of abode, providing for the care, comfort, maintenance, training, and education of the protected person as well as taking care of the protected person's assets and personal effects in the absence of the appointment of a conservator. ORS 125.315(1)(e) provides, in pertinent part:

> "The guardian of a minor has the powers and responsibilities of a parent who has legal custody of a child, except that the guardian has no obligation to support the minor beyond the support that can be provided from the estate of the minor[.]"

In defendant's view, ORS 125.315(1)(e) is controlling authority that his contract with plaintiff is illegal. He also points to the fact that the parties did not seek the approval of the court exercising jurisdiction over Amy's guardianship when he and plaintiff entered into their agreement.

ORS 125.315(1)(e) does not declare that a voluntary, private agreement to allocate the costs of support for the protected person is void, and the wording of the statute does not indicate that the legislature intended such agreements to be illegal. Rather, the legislative intent underlying the statute is apparent from its text and context. Although a guardian is charged with providing for the care and maintenance of a protected person, the protected person's estate is, pursuant to the statute, the source of the money needed for maintenance, and the guardian has no statutory obligation to expend his or her personal funds for that purpose. Consequently, we reject defendant's contention that the agreement is illegal because its support provisions cannot be performed without violating the statutes on which he relies.

An agreement may also be illegal because it is contrary to public policy and morality. We perceive nothing immoral about a private agreement between two nonparent guardians to assume and allocate the cost of supporting a protected person. If anything, it is consistent with public policy to encourage nonparents to provide for the support of a minor who is unable to provide for her own support rather

than making her dependent on the public for support. Nonetheless, defendant argues that the agreement violates public policy. He explains:

"What Plaintiff essentially sought to do in this case is to require that Defendant pay for the right to have liberal contact with the ward. This type of contract is akin to a surrogacy contract or various 'baby selling' contracts. These types of agreements are void as against public policy."

Whether a contract is illegal because it violates public policy must be determined in light of its own particular facts because "public policy" is often difficult to define. Moreover, the freedom of private citizens to make any kind of contract is unrestricted unless it contravenes some "over-powering rule of public policy[.]" *Eldridge et al. v. Johnston*, 195 Or 379, 405, 245 P2d 239 (1952). In determining whether an agreement is void because it is contrary to public policy, " '* * * The test is the *evil tendency* of the contract and not its actual injury to the public in a particular instance,' * * *." *Pyle v. Kernan*, 148 Or 666, 673-74, 36 P2d 580 (1934). (Emphasis added.) Thus, the test essentially requires the court to examine the four corners of an agreement for an "evil tendency."

We read the agreement differently from the way that defendant reads it. The agreement does not on its face make support of Amy the *quid pro quo*[4] for visitation with her. Rather, the agreement deals with two linked but independent subjects, Amy's support and her custody and visitation. The financial provisions of the agreement—which are the only provisions at issue in this summary judgment proceeding—are the way in which the parties agreed to carry out their underlying agreement to be mutually responsible for Amy's support. The details are based on Amy's living with plaintiff, but the underlying agreement to provide support is not dependent on any particular living arrangement. The support provisions are severable from the remainder of the agreement;[5] plaintiff in her complaint does not seek to

---

[4] The mutual consideration that passes between parties to a contract and makes the contract binding and enforceable.

[5] Thus, even if Amy ceased to live with plaintiff, the parties' obligation to support her would remain, although the specific details that the agreement contains might no longer apply.

enforce anything but the support provisions, and we therefore do not need to consider whether the nonfinancial provisions of the agreement are also enforceable. *See* ORS 125.315(1)(a) (guardians have authority to determine minor's residence); *State ex rel Wells v. Stump*, 29 Or App 661, 564 P2d 1088 (1977) (guardians must protect child's interests and not place themselves in position in which their personal interests conflict with child's).

■■  Thus, the issue narrows to whether the agreed-upon consideration for providing support for Amy is illegal or contrary to public policy.

> "Consideration is 'the accrual to one party of some right, interest, profit or benefit or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other.' *Shelley v. Portland Tug & Barge Co.*, 158 Or 377, 387, 76 P2d 477 (1938). Under that definition, 'benefit' means that the promisor has, in return for the promise, acquired a legal right to which the promisor would not otherwise be entitled; 'detriment' means that the promisee has forborne some legal right that the promisee would otherwise have been entitled to exercise. *Id.* at 388."

*McPhail v. Milwaukie Lumber Co.*, 165 Or App 596, 600-01, 999 P2d 1114 (2000). Whether or not there is consideration for the agreement under that definition, based on the proof of the allegations of plaintiff's complaint a finder of fact could conclude that plaintiff provided support for Amy in accordance with the agreement and in reliance on defendant's promise to share in furnishing support to Amy by making the payments that the agreement described. That reliance in itself makes defendant's agreement to contribute enforceable. *See Restatement (Second) of Contracts*, § 90(1) (1981);[6] *Schafer et al. v. Fraser et ux*, 206 Or 446, 290 P2d 190, 294 P2d 609 (1956).

---

[6] *Restatement (Second) of Contracts*, § 90(1) provides:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."

Our conclusion is buttressed by the Supreme Court's decision in *Burch v. Hotchkiss*, 143 Or 28, 21 P2d 209 (1933). In that case, the court indicated that reliance is sufficient to make a contract enforceable under similar circumstances. The defendant in *Burch* signed a series of notes at the time of his divorce from the plaintiff as payment for his share of supporting and educating their children. One note came due every six months until 1935. In April 1929, one child became an adult and, according to the defendant's pleading, " 'was and now is a healthy, able-bodied woman, amply able to earn sufficient money to support herself.' " 143 Or at 30. As a result, beginning in 1931, the defendant refused to pay the notes for that child on the ground that there was no consideration for them. The plaintiff filed an action alleging that there was an agreement between the defendant and herself that they would educate the child without regard to her reaching her legal majority and that the plaintiff had arranged for the child's education at considerable expense. The court held that the plaintiff's promise to use the money for the child's education was adequate consideration for the notes, even though the defendant otherwise had no legal obligation of support after April 1929.

It appears that the court in *Burch* based its decision on the plaintiff's reliance on the defendant's promise to pay the notes and, possibly, on the appropriateness of his agreement to educate his child rather than on traditional theories of consideration. Its holding is best understood as an application of the principles behind *Restatement* section 90—which at the time was only a year old and which Oregon had not yet formally adopted—and the cases on which the *Restatement* relied rather than on more traditional theories. *Burch* indicates, thus, that the courts will enforce a mutual agreement to support a child despite the lack of any a legal obligation to do so, at least when one party relies on the agreement by attempting to fulfill that party's obligations under it. Under the holding in *Burch*, therefore, the financial aspects of the agreement in this case are contractually binding.

■      In this light, we see nothing in the portions of the agreement that are at issue on this appeal that is illegal or that violates public policy. The concerns about exchanging

visitation for money that are the heart of defendant's arguments are simply not at issue in this summary judgment proceeding. The same is true of plaintiff's alleged refusal to permit visitation and of any other matters related to the parties' obligations as joint guardians. There is no evidence that the bargain that led to the parties' agreement contemplated the withholding of visitation based on defendant's nonpayment of the amounts required under the agreement.[7] Rather, defendant's motion says, "[t]he issue presented for resolution by this Motion for Summary Judgment is whether a contract of the kind and nature specified herein is, in fact, enforceable or whether it is void as to public policy." In support of his motion, defendant relied exclusively in the trial court on the agreement and the allegations in plaintiff's complaint. In her complaint, plaintiff alleged that she had complied with all obligations placed on her by the agreement. Because the agreement's support obligations are not illegal in purpose and are capable of being performed without any conflict with the parties' duties as guardians, summary judgment on the record before us is necessarily precluded.[8] The trial court therefore erred in granting defendant's motion for summary judgment.

Reversed and remanded.

---

[7] In fact, defendant's motion states, "The child has not visited with Defendant since before the Agreement was entered into."

[8] All that we decide is that the financial obligations that the parties assumed, and the ways in which they agreed to fulfill those obligations, do not violate public policy. To the extent that there is a claim that there was an illegal bargain struck that led to the agreement, that issue will have to be litigated in the trial court.