Argued and submitted April 29, affirmed September 3, 2008

Terry W. EMMERT,
dba Emmert Development Co.,
*Plaintiff-Respondent,*

*v.*

NO PROBLEM HARRY, INC.,
an Oregon corporation;
and Chao Lin Liu,
*Defendants,*

*and*

Way W. LEE,
*Defendant-Appellant.*

Way W. LEE,
*Counterclaim Plaintiff,*

*v.*

Terry W. EMMERT,
dba Emmert Development Co.,
*Counterclaim Defendant.*

Multnomah County Circuit Court
021111858; A134284

192 P3d 844

Steven W. Seymour argued the cause for appellant. With him on the briefs were Timothy J. Resch and Samuels Yoelin Kantor Seymour & Spinrad LLP.

Aaron M. Wigod argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

This case involves a dispute between plaintiff, the landlord of a warehouse, and defendant,[1] who had a security interest in merchandise stored in that warehouse. Defendant appeals from a limited judgment awarding plaintiff $220,411 in damages for breach of contract and $84,091.33 in prejudgment interest. He alleges that the trial court erred in ruling that the contract was supported by consideration, that it was not ambiguous, that plaintiff adequately pleaded a claim for prejudgment interest, and that defendant's counterclaims for conversion and intentional interference with economic relations lacked merit. We affirm.

Except as noted, the following facts are undisputed. No Problem Harry, Inc. (NPH) leased space in plaintiff's warehouse. The lease provided that failure to pay rent when due constituted default and that, in the event of default, the landlord could reenter and take possession of the premises. By March 27, 2002, NPH was more than $250,000 in arrears. Plaintiff exercised its option to reenter and took possession by changing the locks. Defendant had a perfected security interest in some of the property in the warehouse, and had already found a buyer for it. In order to gain access to the property and complete that sale, he signed an agreement to pay plaintiff $50,000 toward the satisfaction of NPH's debt and (according to plaintiff) to pay the balance of that debt—$220,411—by June 15, 2002, in exchange for access to the warehouse. Defendant, as we explain below, contends that he never agreed to pay the $220,411. In any event, defendant was allowed access to the warehouse, sold the goods, and paid plaintiff $50,000 from the proceeds. However, he did not pay the balance of NPH's debt by June 15. Plaintiff brought this action against defendant for breach of the agreement. Defendant argued that the agreement was unenforceable because it was not supported by consideration and because it was fatally ambiguous. He also counterclaimed, arguing that, after June 15, plaintiff had wrongfully blocked access to

---

[1] Defendants at trial included No Problem Harry, a corporation; Chao Lin Liu, the owner of the corporation; and Way Lee, who had an interest in some of the property in plaintiff's warehouse. Way Lee is the sole appellant. Throughout this opinion, "defendant" refers to Lee only.

defendant's property still stored in the warehouse, thereby effecting a conversion and an intentional interference with defendant's economic relations with prospective buyers. As noted above, the court rejected those arguments and entered judgment in favor of plaintiff for $220,411 plus prejudgment interest. This appeal ensued.

■      Defendant's first assignment of error concerns the following agreement, which defendant signed on May 8, 2002:

> "This agreement shall be binding between the undersigned parties herein for the purpose of continuation of a lease dated October, 1999 between Chow [sic] Lin, dba: [NPH] and [plaintiff].
>
> "The parties agree that as of today, the balance of rent and cam charges due and owing unto [plaintiff] by the lessee is approximately $270,411.00.
>
> "The landlord agrees to waive late fees pursuant to the terms of the subject lease up to the execution of this agreement to [defendant] * * *. Subject to delivery [to the warehouse] a certified check for $50,000.00, and an agreement to pay the balance of rent and cam charges accrued under the subject lease on or before June 10, 2002. In the event that the balance is not paid by June 10, 2002, [defendant] agrees to make full payment by June 15, 2002 * * * by 5pm or shall be in default of this agreement.
>
> "This agreement, in no way shall mean any waiver of rights entitled to [plaintiff] for possession * * * in the event of default of this agreement.
>
> "* * * * *
>
> "[Defendant] hereby further declares that he has full security interest in any and all goods at the leased address * * *. [Defendant] further agrees to take full responsibility financially and severally for any and all property * * * upon entrance into the subject property."

Defendant argues that the agreement was unenforceable for two reasons. First, he argues, it was not supported by consideration; he promised to pay plaintiff and received nothing in return. Second, he argues, the agreement is fatally ambiguous. We discuss those arguments in turn.

Defendant argues that plaintiff's stated promises to "continu[e] [the] lease" and "waive late fees" fail to constitute sufficient consideration because *defendant* derived no benefit from those promises; the benefit accrued to NPH, the lessee. Plaintiff responds that continuing the lease benefitted defendant in at least one respect: it allowed him access to his merchandise in the warehouse until June 15, 2002, so that he could sell it. Plaintiff also points out that those promises constitute a detriment to plaintiff in that plaintiff agreed to collect less than he was owed and to forbear exercise of his rights under the lease.

The parties' arguments conflate two distinct issues: whether the agreement was supported by consideration and whether the agreement "expressed" that consideration for purposes of ORS 41.580(1)(b), the provision in the Oregon statute of frauds governing "agreement[s] to answer for the debt * * * of another." We first consider whether the agreement was supported by consideration. Consideration is defined as some right, interest, profit, or benefit to the promisor (here, defendant) or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the promisee (here, plaintiff). *Shelley v. Portland Tug & Barge Co.*, 158 Or 377, 387, 76 P2d 477 (1938); *Cummings v. Central Oregon Bank et al.*, 110 Or 101, 103, 223 P 236 (1924). "Benefit" means that the promisor has, in return for the promise, acquired some legal right to which he or she would not otherwise have been entitled. *Shelley*, 158 Or at 388. "Detriment" means that the promisee has, in return for that promise, forborne some legal right that he or she would otherwise have been entitled to exercise. *Id.*

Here, the undisputed facts establish that plaintiff agreed to allow defendant access to defendant's property in the warehouse—a clear benefit to defendant, who already had a buyer for the property—in exchange for defendant's promise to answer for at least part of NPH's $270,411 debt. Defendant concedes as much in his opening brief. ("[Plaintiff] would not allow access to the warehouse unless [defendant] signed the Letter of Agreement.") We therefore conclude that the agreement was supported by consideration. That conclusion, however, does not necessarily answer defendant's statute of frauds claim. That claim is based on the statutory

requirement that "[a]n agreement to answer for the debt * * * of another" is "void unless it, or some note or memorandum thereof, *expressing the consideration*, is in writing and subscribed by the party to be charged[.]"[2] ORS 41.580(1)(b) (emphasis added). Thus, the undisputed fact that plaintiff agreed to permit defendant access in return for defendant's promise to pay part of NPH's debt, while establishing the existence of consideration, leaves unanswered the question whether that consideration is expressed within the four corners of the agreement itself.

That question presents a legal issue. *McInnis v. Lind,* 198 Or App 139, 146, 108 P3d 578 (2005). An "express[ion] of consideration" sufficient to comply with ORS 41.580(1) "need not be specific" but must "appear with reasonable clearness from the entire contract." *Public Fire Ins. Co. v. Weatherly,* 148 Or 407, 411, 36 P2d 989 (1934). In this case, the agreement expressly states the following: First, NPH is approximately $270,411 in arrears in its lease and other payments to plaintiff. Second, defendant promises to undertake to pay at least part of that debt. Third, the purpose of the agreement— that is, the reason that defendant is willing to pay off at least part of the lessee's debt—is "continuation" of the lease. Fourth, defendant anticipates his "entrance into" the warehouse. Fifth, plaintiff reserves the right to possess the premises "in the event of default" by defendant. From these provisions, it "appear[s] with reasonable clearness," *id.,* that plaintiff, in return for receiving payment on the lease (and only so long as it receives such payment), will "continu[e]" the lease by foregoing its right to possess the premises—that is, by foregoing its right to lock defendant out. Accordingly, the expression of consideration in the agreement is sufficient to comply with ORS 41.580(1).

Defendant also argues, as part of his first assignment of error, that the agreement is ambiguous on its face

---

[2] Although the word "void" is used in the statute, it is more accurate to say that an agreement that fails to comply with the statute is unenforceable—in that the ordinary legal remedies are unavailable—because such agreements can actually have an effect on the legal relationship of the contracting parties and third parties, whereas void agreements cannot. *See Golden v. Golden,* 273 Or 506, 510, 541 P2d 1397 (1975) (so stating). Accordingly, we discuss the effect of the agreement's compliance or noncompliance with the statute in terms of enforceability.

because its terms can reasonably be given more than one meaning. Specifically, he focuses on the following provision:

> "The landlord agrees to waive late fees pursuant to the terms of the subject lease up to the execution of this agreement to [defendant]. Subject to delivery to [the warehouse] a certified check for $50,000.00, and an agreement to pay the balance of rent and cam charges accrued under the subject lease on or before June 10, 2002."[3]

Defendant concedes that the above provision obligated him to pay plaintiff $50,000, but maintains that it does not further obligate him to pay the balance of the arrearage. He asserts that the language, "[s]ubject to * * * an agreement to pay the balance" is merely an agreement to negotiate, at some future point in time, how the "balance" will be calculated and paid. Plaintiff maintains that the only reasonable interpretation of the provision is that defendant agreed to pay the balance, and the fact that the "balance of rent and cam charges" would need to be calculated does not render the contract unenforceable because "[p]erforming calculations to determine a balance owed pursuant to a Lease is not a term to negotiate." We agree with plaintiff.

A contract provision is ambiguous if it is susceptible to two or more plausible interpretations—that is, two or more sensible and reasonable interpretations—considering the context of the contract as a whole and the circumstances of its formation. *Milne v. Milne Construction Co.*, 207 Or App 382, 388-89, 142 P3d 475, *rev den*, 342 Or 253 (2006). Whether the terms of a contract are ambiguous is a question of law. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). We conclude that the trial court did not err in its interpretation. In addition to the disputed provision, the agreement in this case specifies that the "balance of rent and cam charges due and owing unto [plaintiff] is approximately $270,411.00." The agreement later provides, "In the event that *the balance* is not paid by June 10, 2002, [defendant] agrees to make full payment by June 15, 2002 * * *." (Emphasis added.) Thus,

---

[3] There is no dispute that the sentence fragment beginning with "[s]ubject to" is actually an adverbial clause modifying "agrees"—in other words, that the period before "[s]ubject to" should be a comma.

the agreement, viewed as a whole, is subject to only one plausible interpretation, which is that of the trial court: "Defendant * * * promised to pay $50,000.00 down and to pay the balance of the arrearage amount at that time of $220,411.00 on or before June 15, 2002."

In his second assignment of error, defendant argues that the trial court erred in awarding plaintiff prejudgment interest because plaintiff's pleading foundation was inadequate to establish entitlement to such interest. We review the trial court's award of prejudgment interest for legal error. *Gerber v. O'Donnell*, 81 Or App 262, 265-66, 724 P2d 916 (1986). As explained below, we conclude that the trial court did not err.

In an action at law, a party must specifically plead a foundation for prejudgment interest. *Lithia Lumber Co. v. Lamb*, 250 Or 444, 447, 443 P2d 647 (1968). To do so, that party must (1) request prejudgment interest in the prayer and (2) plead facts sufficient to state a claim for prejudgment interest. *Shepherd v. Hub Lumber Co.*, 273 Or 331, 349, 541 P2d 439 (1975). Those facts supporting a party's claim for prejudgment interest must be stated in the body of the party's complaint. *See Laursen v. Morris*, 103 Or App 538, 547, 799 P2d 648 (1990), *rev den*, 311 Or 150 (1991) ("[W]ith respect to stating a claim for prejudgment interest, the prayer is not part of the statement of the claim. Only if the facts pleaded are sufficient to state a claim for it may prejudgment interest be awarded."). In *Holman Transfer Co. v. PNB Telephone Co.*, 287 Or 387, 406, 599 P2d 1115 (1979), the plaintiff requested prejudgment interest in the prayer but failed to allege an entitlement to that interest in the body of the complaint. The Supreme Court nonetheless held that the plaintiff had pleaded facts sufficient to state a claim for prejudgment interest where it alleged, in the body of its complaint, "the exact amount claimed to be due and the dates during which [the] plaintiff claimed it was deprived of the use of its money." *Id.*

Plaintiff in this case prayed for prejudgment interest and specified in both the prayer and the body of its amended complaint the amount it claimed it was due exclusive of interest—$220,411—and the dates during which it was deprived

of that sum—"as of May 7, 2002." Accordingly, we conclude that the trial court did not err in awarding plaintiff prejudgment interest.

█ Defendant's final assignment of error concerns the trial court's denial of his counterclaims against plaintiff for intentional interference with economic relations and conversion. On appeal, defendant argues that plaintiff blocked defendant's access to the warehouse between May 8 and June 15, 2002, the period during which the agreement granting access was in effect. That blockade, according to defendant, interfered with defendant's prospective economic relations and constituted conversion of the goods stored in the warehouse. Plaintiff responds that the trial court found that plaintiff did not block defendant's access, and that that finding is binding on this court unless no evidence in the record supports it. We agree with plaintiff.

█ We review the trial court's conclusion that defendant "failed to prove * * * all counterclaims" for errors of law. What actually transpired, however, is a question of fact, and the trial court's findings of historical fact, if supported by the evidence, are binding on this court. Or Const, Art VII (Amended), § 3; *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Where findings are not made on disputed issues of fact and there is evidence from which those facts could be decided more than one way, we will presume that they were decided in a manner consistent with the trial court's ultimate conclusion. *Ball*, 250 Or at 487.

█ To state a claim for intentional interference with economic relations, a party must establish (1) the existence of a valid business relationship or expectancy, (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and the damage to economic relations, and (6) damages. *Uptown Heights Associates v. Seafirst Corp.*, 320 Or 638, 651, 891 P2d 639 (1995). To state a claim for conversion, a party must establish the intentional exercise of dominion or control over a chattel that so seriously interferes with the right of another to control it that the actor may justly be required to pay the

full value of the chattel. *Mustola v. Toddy*, 253 Or 658, 663, 456 P2d 1004 (1969).

In this case, then, to establish the "interference" and "exercise of dominion or control" elements necessary to state his counterclaims, defendant must prove that plaintiff blocked his access to the goods stored in the warehouse between May 8 and June 15, 2002. That is an issue of fact. Because the record presents conflicting evidence as to whether such blocking occurred and the trial court ultimately concluded that defendant had failed to prove both of his counterclaims, we presume that the court resolved the conflicting evidence in a manner consistent with that conclusion. In other words, we presume that the trial court found that plaintiff did not block defendant's access to the warehouse between May 8 and June 15, 2002, and at least some evidence supports that finding. We therefore conclude that the trial court did not err in rejecting defendant's counterclaims.

Affirmed.