390 February 8, 2018 No. 5

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

JOSE ROBERTO FIERRO VILLAGOMEZ,
*Respondent on Review.*

(CC 13CR08907; CA A156397; SC S064507)

On review from the Court of Appeals.*

Argued and submitted September 18, 2017.

Andrew M. Lavin, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Morgen E. Daniels, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Before Balmer, Chief Justice, and Kistler, Walters, Nakamoto, Flynn, and Nelson, Justices, and Lagesen, Judge of the Court of Appeals, Justice pro tempore.**

WALTERS, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for resentencing.

_____
    *  On appeal from Yamhill County Circuit Court, Cynthia L. Easterday, Judge. 281 Or App 29, 380 P3d 1150 (2016).

    ** Landau, J., retired December 31, 2017, and did not participate in the decision of this case. Duncan, J., did not participate in the consideration or decision of this case.

**WALTERS, J.**

A jury found defendant guilty of unlawful possession and unlawful delivery of methamphetamine. The presumptive sentence for those crimes is probation. However, under ORS 475.900(1)(b), when the state establishes that those crimes constituted commercial drug offenses, the presumptive sentence is imprisonment. To prove a commercial drug offense, the state must establish any three out of eleven statutorily enumerated factors, one of which is that the "delivery" of the drug was "for consideration." This case requires us to determine whether that factor may be proved by evidence that the defendant possessed the drugs with an intent to sell them, or, instead, requires the state to prove a completed sale of drugs or an existing agreement to sell them. For the reasons that follow, we conclude that the legislature intended the latter, and we affirm the decision of the Court of Appeals. *State v. Villagomez*, 281 Or App 29, 41, 380 P3d 1150 (2016).

The relevant facts are not in dispute. Defendant was stopped for a traffic violation. During that stop, officers discovered 141.98 grams of methamphetamine divided into separate bags, more than $4,000 cash, three cellphones, and a ledger that the police believed contained drug records. The state charged defendant with unlawful possession of methamphetamine under ORS 475.894 and unlawful delivery of methamphetamine under ORS 475.890. At trial, the state sought to prove delivery by showing that defendant possessed a large amount of methamphetamine with the intent to transfer it. The Court of Appeals has held that such evidence, commonly referred to as a *Boyd* delivery, is sufficient to prove a delivery under ORS 475.005(8). *State v. Boyd*, 92 Or App 51, 54, 756 P2d 1276, *rev den*, 307 Or 77, 763 P2d 731 (1988).[1] The state also alleged, for the purpose of seeking an enhanced sentence, that defendant's possession and delivery of methamphetamine were "commercial drug offense[s]" under ORS 475.900(1)(b). That statute provides that unlawful possession, delivery, or manufacture of certain controlled

---

[1] In this case, defendant does not challenge the sufficiency of the evidence that the state adduced to support his conviction for delivery under ORS 475.890.

substances is a commercial drug offense if accompanied by any three of eleven factors (CDO factors). In this case, the state alleged the existence of four CDO factors: (1) the delivery was of methamphetamine "and was for consideration"; (2) defendant was in possession of $300 or more in cash; (3) defendant was in possession of drug records; and (4) defendant was in possession of eight grams or more of methamphetamine. The state also alleged another fact, independent of the CDO factors, that, if proved, would result in an enhanced sentence under ORS 475.900 (1)(a)(C). The state alleged that defendant had delivered a "substantial quantity" of methamphetamine.

At the close of evidence, defendant moved for a judgment of acquittal on the "for consideration" CDO factor, ORS 475.900(1)(b)(A). He argued that, to satisfy that factor, the state needed to show that there was "actual" or "real" consideration, which "must have already been given to the defendant or [,] in the very least, a bargain must have been struck leaving only the consideration to be exchanged between parties." The state disagreed and argued that, because "constructive delivery is included in delivery," the "for consideration" factor is appropriate in a "constructive delivery case." The trial court agreed with the state and denied defendant's motion. The jury found defendant guilty of unlawful possession and unlawful delivery of methamphetamine. It also found that the state had proved three of the four alleged CDO factors, including the "for consideration" factor, and the "substantial quantity" enhancement. Based on those findings, the trial court imposed a commercial drug offense sentence under ORS 475.900. For defendant's delivery conviction, the court placed defendant in crime category 9-I[2] on the sentencing guidelines grid and sentenced him to 36 months' prison. For defendant's possession conviction, the court placed defendant in crime category 8-I and sentenced him to 16 months' prison.

---

[2] The Court of Appeals did not understand why defendant was placed at a 9-I on the sentencing guidelines, given that ORS 475.900(1) provides that a conviction for delivery of methamphetamine should result in a crime category 8 placement if the enhancements defendant was subject to apply. *State v. Villagomez*, 281 Or App 29, 35 n 4, 380 P3d 1150 (2016). Defendant did not question that determination before the Court of Appeals. *Id.* He also does not question it here.

Defendant appealed to the Court of Appeals, where he renewed his argument about the sufficiency of the evidence to establish the "for consideration" CDO factor. The Court of Appeals agreed with defendant that the evidence was insufficient to prove that factor. *Villagomez*, 281 Or App at 40. The court interpreted ORS 475.900(1)(b)(A) to require evidence of a completed sale or an existing agreement to sell the drugs that defendant possessed. *Id.* at 39. Because the state had not offered such evidence, the court held that the trial court had erred in denying defendant's motion for a judgment of acquittal. *Id.* at 40. Accordingly, the court held that the state had proved only two of three factors necessary to establish a commercial drug offense and that the trial court had erred in sentencing defendant to prison on that basis. *Id.* However, the court explained, the state had proved that defendant had delivered a "substantial quantity" of methamphetamine, which independently permitted an enhanced sentence for the delivery conviction under ORS 475.900(1)(a)(C). *Id.* Thus, the court reasoned, the trial court's error in construing the "for consideration" factor was harmless. *Id.* 40-41. The same was not true for defendant's enhanced sentence for possession, however. *Id.* at 41. Because the "substantial quantity" finding did not permit an enhanced sentence for the possession conviction, the court reversed that conviction and remanded for entry of judgment and resentencing, without the commercial drug offense enhancement.[3] *Id.*

The state filed a petition for review, which we allowed. In this court, the parties reprise their arguments concerning the evidence that is necessary to establish the "for consideration" CDO factor, ORS 475.900(1)(b)(A). We approach that issue using the methodology established in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). Our goal

---

[3] The Court of Appeals noted in a footnote that it appears that the "for consideration" CDO factor apparently may apply only when the underlying crime of conviction is delivery. *Villagomez*, 281 Or App at 35 n 5. However, neither defendant nor the state raised an argument regarding that point, and the court thus assumed, without deciding, that the "for consideration" CDO factor applies when the underlying crime is possession as well as when it is delivery. *Id.* Similarly, in this court, neither party raises an issue about the "for consideration" factor's applicability to sentences for possession convictions. Therefore, we also assume, without deciding, that that factor applies.

is to determine the meaning that the legislature intended, by considering the text and context of that statutory provision, as well as any pertinent legislative history. *See id.* at 171-72 (setting out methodology for determining the legislature's intent).

ORS 475.900 was enacted in 1991 and provides for increased sentences for certain drug crimes. Relevant here, a sentence "shall be classified as crime category 8 on the sentencing guidelines gird" if:

> "(b)  The violation constitutes possession, delivery or manufacture of a controlled substance and the possession, delivery or manufacture is a commercial drug offense. A possession, delivery or manufacture is a commercial drug offense for purposes of this subsection if it is accompanied by at least three of the following factors:
>
> "(A)  The delivery was of *** methamphetamine *** and was for consideration[.]"

ORS 475.900(1)(b)(A). This case requires that we construe the meaning of subparagraph (A) and, particularly, the terms "delivery" and "for consideration."

"Delivery" is statutorily defined. It means "the actual, constructive or attempted transfer, other than by administering or dispensing, from one person to another of a controlled substance, whether or not there is an agency relationship." ORS 475.005(8). As noted, because "delivery" includes "constructive" and "attempted" as well as "actual" transfers of a controlled substance, the Court of Appeals has construed that term to permit conviction based on evidence that a defendant possessed a large amount of a controlled substance with an admitted intent to sell it. *Boyd*, 92 Or App at 54. That is evidence, the court explained, that "amounts to evidence that [the defendant] had taken a substantial step toward the commission of the crime of delivery of a controlled substance." *Id.*

"Consideration" is not defined by statute, but it has a well-defined legal meaning that we presume that the legislature intended. *See Zimmerman v. Allstate Property and Casualty Ins.*, 354 Or 271, 280, 311 P3d 497 (2013) ("When the term has acquired specialized meaning in a particular

industry or profession, however, we assume that the legislature used the term consistently with that specialized meaning."). This court has defined "consideration" as "the accrual to one party of some right, interest, profit or benefit or some forebearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Shelley v. Portland Tug & Barge Co.*, 158 Or 377, 387, 76 P2d 477 (1938). *Black's Law Dictionary* and *The Restatement (Second) of Contracts* offer similar definitions. *See Black's Law Dictionary* 306 (6th ed 1990) (Consideration is "[t]he inducement to a contract. The cause, motive, price, or impelling influence which induces a contracting party to enter into a contract. Some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility, given, suffered, or undertaken by the other."); *Restatement (Second) of Contracts* § 71 (1981) (consideration "must be bargained for," which is accomplished when performance or a return promise "is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise").

In this case, the parties do not dispute the definition of "delivery" or that *Boyd* permits conviction for unlawful delivery on proof of possession of a large amount of drugs with the intent to sell them. Rather, the parties dispute the meaning of the phrase "for consideration" as that term is used in ORS 475.900(1)(b)(A). Defendant contends that, absent a completed sale, a "delivery" cannot be "for consideration" unless there is a contract of sale: one person must have agreed to deliver drugs in exchange for some benefit or forbearance by another. According to defendant, delivery is not "for consideration" when one person unilaterally hopes or intends to make such a bargain in the future.

The state disagrees, not with the legal definition of the term "consideration" but with how the word "for" is used in the phrase "for consideration." That word, the state contends, means "in order to bring about or further"; "with the purpose or object of"; "in order to obtain * * * or gain"; or "so as to secure as a result." *Webster's Third New Int'l Dictionary* 886 (unabridged ed 2002). Thus, the state argues, a defendant who possesses drugs with the intent to sell them in the

future engages in "delivery" and does so "for" consideration. The defendant intends to deliver the drugs "with the purpose of" or "in order to obtain" consideration in the future.

In our view, defendant's construction of the phrase "for consideration" gives greater effect to the legal meaning of the term "consideration" and is therefore more likely to be the construction that the legislature intended. As explained, that term is used to describe the basis for a bargain that two parties reach; it is what is sought by the promisor in exchange for a promise and given by the promisee in exchange for the promise. *See Enco, Inc. v. F.C. Russell Co.*, 210 Or 324, 339, 311 P2d 737 (1957) (explaining consideration as bargained-for exchange); *Emmert v. No Problem Harry, Inc.*, 222 Or App 151, 155, 192 P3d 844 (2008) (same). As the basis for a bargain, consideration presumes the existence of a bargain. *See Moro v. State of Oregon*, 357 Or 167, 196 n 18, 351 P3d 1 (2015) ("'Consideration' is that which one party provides to the other in exchange for entering into the contract."). The state's focus on the plain meaning of the term "for" and its argument that a delivery can be "for" consideration when a person unilaterally hopes to make a bargain in the future fail to fully contend with the fact that "consideration" is a legal term of art that describes the basis for an existing contract. Nonetheless, ORS 475.900(1)(b)(A) plausibly may be read as the state reads it, and we turn to context for additional clarity.

The state argues that the way that Oregon law defines "delivery" provides important context supporting its position. *See State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (a statute's context includes "related statutes"). As noted, ORS 475.005(8) defines "delivery" to include constructive and attempted transfers of drugs, and, in *Boyd,* 92 Or App 51, the Court of Appeals held that evidence of possession of a controlled substance with the intent to sell it is sufficient to demonstrate "delivery" as that provision defines it. The state observes that *Boyd* had been decided when the legislature adopted the CDO factors in ORS 475.900(1)(b). Thus, it argues, the legislature's use of the word "delivery," without restriction, evinces an intent to punish defendants who possess large amounts of drugs with the intent to sell

them, even if the state does not also establish a completed sale or the existence of an agreement to sell those drugs.

As explained later in our discussion of legislative history, we agree with the state that the legislature was aware of the Court of Appeals decision in *Boyd* and thought that a *Boyd* delivery could be punished as the crime of "delivery." We also agree that the legislature intended that a *Boyd* delivery would be eligible for enhanced sentencing. But we do not agree that the legislature's use of the word "delivery" in ORS 475.900(1)(b)(A) necessarily indicated an intent to make a *Boyd* delivery sufficient to establish the "for consideration" CDO factor. Instead, the legislature may have intended to require proof of facts in addition to those necessary to prove a *Boyd* delivery to establish a commercial drug offense. The other CDO factors in ORS 475.900 (1)(b) provide helpful context for that view. *See Force v. Dept. of Rev.*, 350 Or 179, 188, 252 P3d 306 (2011) (stating that "'context' includes, among other things, other parts of the statute at issue").

ORS 475.900(1)(b) allows a sentence for a drug conviction to be increased from a crime category carrying a presumptive sentence of probation to a crime category carrying a presumptive sentence of imprisonment if the underlying violation is a "commercial drug offense." *See* ORS 475.900(1)(b) (stating that a commercial drug offense is crime category 8); ORS 475.900(3)(a),(b) (stating default crime categories for possession and delivery of controlled substance are 1 and 4, respectively). To establish that a delivery is a "commercial drug offense," as opposed to an "ordinary" or "regular" delivery, the legislature requires the state to prove at least three out of eleven enumerated CDO factors. ORS 475.900(1)(b). Thus, the purpose that those factors serve is to distinguish the two types of offenses and to punish the more serious offense—*i.e.*, the commercial drug offense—more severely.

Logically, then, those eleven CDO factors would describe facts separate from, and in addition to, those required to prove "ordinary" or "regular" delivery that, in the legislature's view, would make an "ordinary" or "regular" delivery more serious. A review of those eleven factors

supports that deduction.[4] For example, subparagraph (B) of ORS 475.900(1)(b) requires evidence that the "offender was in possession of $300 or more in cash"; subparagraph (C) requires evidence that the "offender was unlawfully in

---

[4] The eleven factors in ORS 475.900(1)(b) are as follows:

"(A) The delivery was of heroin, cocaine, methamphetamine, lysergic acid diethylamide, psilocybin or psilocin and was for consideration;

"(B) The offender was in possession of $300 or more in cash;

"(C) The offender was unlawfully in possession of a firearm or other weapon as described in ORS 166.270 (2), or the offender used, attempted to use or threatened to use a deadly or dangerous weapon as defined in ORS 161.015, or the offender was in possession of a firearm or other deadly or dangerous weapon as defined in ORS 161.015 for the purpose of using it in connection with a controlled substance offense;

"(D) The offender was in possession of materials being used for the packaging of controlled substances such as scales, wrapping or foil, other than the material being used to contain the substance that is the subject of the offense;

"(E) The offender was in possession of drug transaction records or customer lists;

"(F) The offender was in possession of stolen property;

"(G) Modification of structures by painting, wiring, plumbing or lighting to facilitate a controlled substance offense;

"(H) The offender was in possession of manufacturing paraphernalia, including recipes, precursor chemicals, laboratory equipment, lighting, ventilating or power generating equipment;

"(I) The offender was using public lands for the manufacture of controlled substances;

"(J) The offender had constructed fortifications or had taken security measures with the potential of injuring persons; or

"(K) The offender was in possession of controlled substances in an amount greater than:

"(i) Three grams or more of a mixture or substance containing a detectable amount of heroin;

"(ii) Eight grams or more of a mixture or substance containing a detectable amount of cocaine;

"(iii) Eight grams or more of a mixture or substance containing a detectable amount of methamphetamine;

"(iv) Twenty or more user units of a mixture or substance containing a detectable amount of lysergic acid diethylamide;

"(v) Ten grams or more of a mixture or substance containing a detectable amount of psilocybin or psilocin; or

"(vi) Four grams or more or 20 or more pills, tablets or capsules of a mixture or substance containing a detectable amount of:

"(I) 3,4-methylenedioxyamphetamine;

"(II) 3,4-methylenedioxymethamphetamine; or

"(III) 3,4-methylenedioxy-N-ethylamphetamine."

possession of a firearm or other weapon"; and subparagraph
(D) requires evidence that the "offender was in possession
of materials being used for the packaging of controlled sub-
stances." ORS 475.900(1)(b)(B)-(D). To prove those factors,
the state must produce evidence that is not required to prove
"ordinary" or "regular" delivery; the state may prove unlaw-
ful delivery without adducing evidence that the defendant
was in possession of cash, weapons, or packaging materials.[5]

 If we interpret the "for consideration" CDO factor as
defendant suggests, it also would require proof of facts that
are not necessary to prove delivery. To prove a *Boyd* deliv-
ery, the state need prove only that a defendant possessed a
large amount of drugs with the intent to sell them. *Boyd*,
92 Or App at 54. Under the state's proposed construction of
the "for consideration" CDO factor, however, proof of a *Boyd*
delivery alone would establish that factor. That is, posses-
sion of a large amount of a controlled substance with the
intent to sell it would establish both "delivery" and deliv-
ery "for consideration." But, under defendant's construction,
an additional fact would be necessary: the state would be
required to adduce evidence of a completed sale or an agree-
ment to sell the drugs. With that interpretation, the "for
consideration" factor would have the same function as other
enumerated factors. It would specify a fact that, in addition
to those necessary to prove a *Boyd* delivery, is needed to
prove a commercial drug offense.

 The state sees it differently. The state agrees that
other CDO factors provide helpful context for an under-
standing of the "for consideration" factor. However, the
state contends, because those factors do not require proof
of a completed sale or an existing agreement with a partic-
ular buyer, there is no reason to think that the legislature
intended the "for consideration" factor to require such proof.
We do not find it surprising that evidence needed to estab-
lish the "for consideration" factor is different from the evi-
dence required to prove the other CDO factors. Each factor

---

[5] There is one factor that may not require evidence in addition to that nec-
essary to establish a *Boyd* delivery to establish a commercial drug offense.
Subparagraph (K) applies when an offender is in possession of specified amounts
of certain drugs. ORS 475.900(1)(b)(K). Proof of a *Boyd* delivery potentially could
prove subparagraph (K).

describes a different circumstance that, in combination with others, may indicate that a particular drug crime is a commercial drug offense. To prove a commercial drug offense, the state may offer evidence of any three or more enumerated factors. Thus, the state may obtain the enhanced punishment that a commercial drug offense provides without proving a completed sale or an existing agreement to sell, as long as it relies on CDO factors other than the "for consideration" factor to do so.

In our view, the CDO factors that the legislature enumerated to establish that a delivery is a commercial drug offense are indicators that the legislature intended the "for consideration" CDO factor to have the meaning for which defendant advocates. Our endeavor is not complete, however; we also consider legislative history to ascertain legislative intent.

ORS 475.900 was enacted as a result of the constitutional concerns created by one of the provisions in the 1989 sentencing guidelines classifying the manufacture, delivery, or possession of a controlled substance as a crime category 8 on the sentencing guidelines grid in a particular circumstance. If the violation "occurred as part of a drug cultivation, manufacture or delivery scheme or network," the violation was classified as crime category 8 and resulted in a presumptive prison sentence. *Former* OAR 253-04-002(3) (Sept 1, 1989); *see also* Or Laws 1989, ch 790, § 87 (approving sentencing guidelines). The phrase "delivery scheme or network" was not defined, but the commentary to the sentencing guidelines provided a relevant list of facts to consider.[6] *Oregon Sentencing Guidelines Implementation Manual* 13 (1989). However, those facts did not need to be pleaded

---

[6]  There were eight listed facts:

"A.   The presence of substantial amounts of cash at the scene of arrest.

"B.   The presence of weapons at the scene of arrest.

"C.   The presence of manufacturing or distribution materials such as drug recipes, precursor chemicals, laboratory equipment, lighting, irrigation systems, ventilation or power-generating, scales, or packaging material.

"D.   The presence of drug transaction records or customer lists.

"E.   The presence of large quantities of stolen property.

"F.   Building modifications including painting, wiring, plumbing, or lighting which facilitated the commission of the offense.

in the charging instrument and were, for the most part, vague. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Jan 30, 1991, Tape 11, Side A (statement of Rep Tom Mason). Practitioners disagreed on the meaning of some of the facts, who decided if the facts were proven, and what level of proof was required to establish the facts; circuit courts even disagreed on whether the "scheme or network" provision was constitutional because of those concerns. *Id.*; *see also* Exhibit B, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Jan 30, 1991 (opinion by Honorable Harl Haas); Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Jan 30, 1991, Tape 11, Side A (statement of Ross Shepard) (stating that at least five counties regularly sustain demurrers to indictments that pleaded the "scheme or network" language).

In February 1991, in *State v. Moeller*, 105 Or App 434, 441, 806 P2d 130 (1991), the Court of Appeals held that the provision in the sentencing guidelines—specifically, the phrase "part of a drug cultivation, manufacture or delivery scheme or network"—was unconstitutionally vague, and it struck it down.[7] By the time *Moeller* was decided, the legislature already had begun deliberations on HB 2390 (1991), a joint effort by the Oregon District Attorneys Association (ODAA) and the Oregon Criminal Defense Lawyers Association (OCDLA) to address the shortcomings of the "scheme or network" provision at issue in *Moeller*.[8] The goal of the bill was twofold: (1) to provide for presumptive prison

_____

"G.    Possession of large amounts of illegal drugs or substantial quantities of controlled substances.

"H.    A showing that the offender has engaged in repeated similar criminal acts associated with the manufacture, cultivation or delivery of controlled substances."

*Oregon Sentencing Guidelines Implementation Manual* 13 (1989).

[7] This court allowed review of that decision, but it later dismissed review because the legislature "superseded" the "scheme or network" provision by enacting what is now ORS 475.900. *State v. Moeller*, 312 Or 76, 79, 815 P2d 701 (1991).

[8] Representative Tom Mason explained that representatives for each group worked together to draft HB 2390. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Jan 30, 1991, Tape 11, Side A (statement of Rep Mason). However, according to Representative Mason, neither group "want[ed] to admit parentage" of the bill. *Id.*

sentences for serious drug offenses; and (2) to create clearly defined factors that must be pleaded and proved to establish those presumptive sentences. Tape Recording, Senate Committee on Judiciary, HB 2390, May 24, 1991, Tape 187, Side A (statement of Rep Mason).

As it was initially proposed by Representative Tom Mason in January 1991, HB 2390 provided two bases for a presumptive crime category 8 on the sentencing guidelines. First, under subsection (1), a defendant could receive a crime category 8 placement if the violation "[c]onsisted of delivery for consideration of heroin, cocaine or methamphetamine." Bill File, HB 2390, Dec 10, 1990 (Draft Bill). Second, if that criterion were not met, the statute provided a list of ten factors under subsection (2) that could lead to a defendant receiving a crime category 8 placement. *Id*. Representative Mason explained that "subsection (1), the sale—you know 'the distribution for consideration'—sale," came at the request of the district attorneys to address their concern that, without that provision, the presumptive sentence for drug sales would not be time in prison. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Jan 30, 1991, Tape 12, Side A (statement of Rep Mason); *see* Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Jan 30, 1991, Tape 11, Side A (statement of Rep Mason) (explaining concerns of district attorneys). He testified that, under subsection (1), the "operative" and "important" phrase is "delivery for consideration." Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Jan 30, 1991, Tape 11, Side A (statement of Rep Mason). Representative Mason described "consideration"—which he stated was "lawyer talk for 'sell'"—as a limiting word because the term "delivery" is very broad; he further explained that defendants who sell are subject to an enhanced penalty. *Id*.

Attorney Ross Shepard, a witness appearing on behalf of OCDLA, testified that HB 2390 went a long way in addressing the problems of the "scheme or network" provision that was at issue in *Moeller*. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Jan. 30, 1991, Tape 11, Side A

(statement of Ross Shepard). However, Shepard wanted the committee to realize that, under the bill as written, any monetary transaction involving drugs would result in a prison sentence. *Id*. He suggested that a "first time sale of a small amount of drugs" equals jail time under the bill, and he expressed his concern that drug deals between friends would be covered by subsection (1). *Id*. In a similar vein, Representative Del Parks expressed his discomfort with any sale for consideration leading to a prison sentence and discussed how "20 year-old kid[s] who trade it back and forth, they are in there on just that factor alone." Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Jan 30, 1991, Tape 12, Side A (statement of Rep Del Parks). As a result of the concern that "delivery for consideration" would lead to prison time on its own, subsection (1) was removed and became part of the factor analysis in subsection (2). Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Feb 5, 1991, Tape 16, Side A (statement of legislative counsel Greg Chaimov) (explaining that subsection (1) was moved because the committee was uncomfortable simply having the "sale of heroin, cocaine, or methamphetamine" to be sufficient to guarantee prison time and that the new draft of HB 2390 makes the "sale" of those substances one of the factors to consider).

As HB 2390 continued to make its way through the House, other bills addressing the delivery of controlled substances were before the legislature. Notably, on February 19, the House Subcommittee on Crime and Corrections—the same subcommittee that considered HB 2390—held a hearing on HB 2502 (1991), a bill that sought to enhance the penalty for the delivery of controlled substances to minors within 1,000 feet of a school. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2502, Feb 19, 1991, Tape 25, Side A (statement of Rep Kevin Mannix).

During the work session on HB 2502, Representative Ray Baum floated the idea of eliminating the geographic limitation in the bill and instead making all deliveries of a controlled substance a Class A felony. Tape Recording,

House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2502, Feb 19, 1991, Tape 26, Side A (statement of Rep Ray Baum). Jim McIntyre of the Multnomah County District Attorney's Office stated that giving all drug deliveries Class A felony treatment would make a "clear statement to drug dealers" but that the fiscal impact "would be incredible." *Id*. (statement of Jim McIntyre). Interjecting in that discussion, Representative Mason explained that "'delivery' is not synonymous with 'sale.'" *Id*. (statement of Rep Mason). Representative Mason stated that, under Oregon law, "you can be charged with delivery and no sale have ever occurred." *Id*. Representative Mason further said that the amount itself can be "constructive delivery" and that "the committee should be aware of the difference between 'delivery' and 'delivery for consideration,'" which "are not the same thing." *Id*.

The discussion shifted momentarily before returning back to "delivery for consideration." Representative Parks remarked, "remember we were talking last week about 'delivery for consideration.' Do not the vast majority of what we have been talking about here, would the 18-year-old kid fit in 'delivery for consideration'?" *Id*. (statement of Rep Parks). Representative Mason answered Representative Park's question in the affirmative and stated that, although "much of the time there is indeed consideration," "you can be charged with delivery by circumstances other than cash" as result of the Court of Appeals' decision in *Boyd*. *Id*. (statement of Rep Mason). Representative Mason then enlisted the help of Jim McIntyre to briefly discuss the facts and holding of *Boyd*. *Id*. McIntyre explained that, in *Boyd*, the state relied on "all of the indicia of attempting to deliver" to establish that the defendant was delivering a controlled substance and that the court "found it to be enough evidence to constitute an intentional, substantial step towards actually delivering drugs, so therefore it was found to be delivery of a controlled substance." *Id*. (statement of McIntyre).

Representative Parks, trying to understand how the penalties worked under HB 2502, expressed his concern that a single sale from an 18-year-old to another 18-year-old would result in a prison sentence under HB 2390, and he did

not understand how the penalty would be different under HB 2502. *Id.* (statement of Rep Parks). In attempting to explain the difference between the two bills, Representative Mason stated that one of the reasons HB 2390 was phrased in terms of "delivery for consideration" "was to avoid the *Boyd* situation, which has got[ten] a little flexible." *Id.* (statement of Rep Mason). Representative Mason described the doctrines of constructive delivery and possession as the reason HB 2390 was "fairly circumscribed." *Id.* Representative Mason further explained that he had no problem with enhancing criminal penalties for the delivery of a controlled substance, but he stated that he "would like them enhanced based on 'delivery for consideration' because [he] want[s] at the real thing." *Id.*

The next day, on February 20, the subcommittee held a public hearing and work session on HB 2390, but the focus of the discussion was centered on amendments proposed by ODAA. *See* Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Feb 20, 1991, Tape 30, Side A; Tape 31, Side A; and Tape 30, Side B (discussing amendments). There does not appear to have been a significant discussion at that hearing regarding the "for consideration" factor or making all deliveries for consideration a Class A felony.

After the House's final work session on the bill in March, HB 2390 provided two pathways for increasing a defendant's sentence for a drug violation to a crime category 8 on the sentencing guidelines grid: (1) the state could plead and prove that a defendant possessed, delivered, or manufactured a substantial quantity of a controlled substance; or (2) the state could plead and prove factors that indicated that a defendant was engaged in a commercial drug offense. Bill File, HB 2390, Mar 18, 1991 (A-Engrossed Bill). The "for consideration" factor, which was one of eleven enumerated factors, did not receive much attention when it reached the Senate Committee on Judiciary.[9] The most notable

---

[9] When HB 2390 reached the Senate, the wording of that factor had been amended. What had been "delivery for consideration of" a controlled substance became "the delivery was of [a controlled substance] and was for consideration." Bill File, HB 2390, Mar 18, 1991 (A-Engrossed Bill). That change appears to have taken place during staff revisions before the March 8 work session. There

statements regarding that factor came from an exchange between Ross Shepard, Representative Mason, and Senator Jim Bunn.

At the time of that exchange, the discussion was focused on paragraph (2)(d) of HB 2390, which provided, "The offender was in possession of materials used for the packaging of controlled substances such as scales, wrapping or foil." Bill File, HB 2390, Mar 18, 1991 (A-Engrossed Bill). Senator Bunn asked Shepard whether he thought that someone delivering a drug to someone else, other than when the person holds the drug in her hand to transfer it, covered two of the CDO factors almost immediately—namely, as Senator Bunn put it, "you've got a container that it is in plus the drug." Tape Recording, Senate Committee on Judiciary, HB 2390, May 24, 1991, Tape 188, Side A (statement of Sen Bunn). Shepard agreed with Senator Bunn that those two factors—paragraph (2)(d) covering drug packaging materials and, presumably, paragraph (2)(k) covering possession of an amount of a controlled substance greater than that needed for personal use—would be met under those circumstances. *Id.* (statement of Shepard). Senator Bunn then modified the hypothetical and stated that, "if delivery takes place for consideration, which is [paragraph (2)](a), then you've got one of your three, and as long as the amount of the delivery was over the threshold you've got all three." *Id.* (statement of Sen Bunn). Shepard again agreed with Senator Bunn's conclusion and stated that that would be a good reason to require more than three factors to establish an enhanced penalty. *Id.* (statement of Shepard).

At that point, Representative Mason briefly explained to the committee that, "in drug law, the term delivery is much, much broader" than actual hand-to-hand transfers. *Id.* (statement of Rep Mason). Senator Bunn stated that that only extended the point that he was trying to make, and he then suggested that someone who had a bag in their home with a large amount of a drug might meet all

___

is not any indication why the wording changed, but the legislative staff and legislators viewed the amendments as "technical" changes. Tape Recording, House Committee on Judiciary, HB 2390, Mar 8, 1991, Tape 25, Side A (comments of legislative counsel Greg Chaimov and Rep Mason). Thus, we do not view the change as significant.

three factors automatically. *Id.* (statement of Sen Bunn). In response to that suggestion, Representative Mason stated that a person in that situation would "meet at least two." *Id.* (statement of Rep Mason). Senator Bunn went on to ask "why we have the wrapping [factor] when it virtually, automatically guarantees two and we are looking for separate criteria to be met?" *Id.* (statement of Sen Bunn). He was concerned that, although it was not the intent of the drafters of the bill, the state would just plead the packaging factor in the event that it needed to get over the threshold of three factors. *Id.* In response to Senator Bunn's concerns, paragraph (2)(d) was amended so that the packaging that the drug was in did not count for the purposes of that factor. Bill File, HB 2390, June 24, 1991 (B-Engrossed Bill).

HB 2390 went through one more work session in the Senate, but there does not appear to have been any more discussion on the "for consideration" factor. HB 2390 was eventually passed by the legislature and became ORS 475.900,[10] the focus of this appeal.

The legislative history strongly supports our understanding of the meaning of ORS 475.900(1)(b)(A). That CDO factor, like the others the legislature enumerated, was intended to limit and specifically describe the circumstances that would permit a jury to find that a defendant had committed a commercial drug offense carrying a presumptive sentence of imprisonment.

In enacting ORS 475.900(1)(b), the legislature sought to address the problems raised by the "scheme or network" provision and the Court of Appeals' holding in *Moeller*, 105 Or App 434, that that provision is unconstitutionally vague. Over the course of the legislative proceedings, the legislature removed facts that were vague and that had, in effect, placed the burden on the defendant to explain why the factor did not apply. *See* Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, Jan 30, 1991, Tape 12, Side A (statements of Rep Mason and Hon Haas) (Mason explaining that heavy traffic on premises factor and possession of valuable property without plausible means of lawful income factor too "slippery" to keep in HB

---

[10] Renumbered from ORS 475.996 in 2005.

2390, and Haas suggesting that those factors might force the defendant to testify); Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Feb 20, 1991, Tape 30, Side A (statement of Rep Parks) (stating that possession of property without plausible means of lawful income factor too vague and better not to have in HB 2390).

In contrast to the facts that were deleted from the bill, the CDO factors that the legislature finally included were factors that required an objective determination. For example, some of the factors require that the defendant possess specific items—cash, weapons, materials used to package drugs, drug records or customer lists, stolen property, manufacturing paraphernalia, or specific amounts of drugs. ORS 475.900(1)(b)(B)-(F), (H), (K). Others require a showing that structures were modified or constructed, or that land was used in a certain way. ORS 475.900(1)(b)(I),(J). Interpreting subparagraph (A) to also require an objective determination of the existence of a completed sale or an agreement to sell, rather than permitting the state to rely only on evidence of a subjective intent to sell, is consistent with that legislative effort.

Even more significantly, the legislative history is replete with indications that the legislature intended the "for consideration" CDO factor to require a sale, as opposed to an intent to sell. As noted, much of the discussion of that factor described it as requiring a "sale." And, the legislature frequently distinguished between a *Boyd* delivery and delivery "for consideration." The only aspects of the legislative history to which the state points as supporting its interpretation of the "for consideration" factor are the legislature's understanding that "delivery" is a broadly defined term that would encompass *Boyd* deliveries and that the legislature intended to identify facts that it believed would evidence participation in a drug enterprise. We agree that the legislature had those thoughts in mind, but we do not see them as inconsistent with our understanding of the meaning of ORS 475.900(1)(b)(A).

The state is correct that the legislature adopted a broad definition of "delivery" in ORS 475.005(8) that does

not require a completed sale or an existing agreement to sell to prove a conviction. Yet, that broad definition of "delivery" is not inconsistent with a legislative intent to make one of the CDO factors providing a basis for enhanced punishment be a completed sale or an existing agreement to sell specified drugs. The state also is correct that the legislature enumerated CDO factors that it believed were circumstantial—and not direct—evidence of a defendant's participation in a drug enterprise. However, that description of the legislature's purpose also is not inconsistent with a legislative intent to include a completed sale or an existing agreement to sell drugs as one of those factors. Such a sale or agreement may be indirect evidence of participation in a drug enterprise.

Looking at the legislative history as a whole, we understand the legislature's intent to be an intent to describe objective circumstances that warrant sentencing a crime involving controlled substances as a more serious crime—a commercial drug offense. Interpreting the "for consideration" CDO factor as requiring proof of a completed sale or an existing agreement to sell drugs is consistent with that intent. And, contrary to the state's primary argument, that interpretation is not inconsistent with the statutory text. As noted, "consideration" is a legal term. It describes one of the circumstances that is necessary for an existing contract to be enforceable: it must be supported by "consideration"—*i.e.*, a bargained-for exchange. We do not fail to give heed to that text when we interpret ORS 475.900(1)(b)(A) to require proof of a completed sale or an existing agreement to sell the drugs.

In this case, the state concededly did not adduce evidence sufficient to establish the "for consideration" CDO factor as we have construed it.[11] Thus, the trial court erred in denying defendant's motion for a judgment of acquittal on that factor. And, as the Court of Appeals held, without the "for consideration" factor, the state proved only two CDO factors. Therefore, it was error for the trial court to impose

_____

[11] Because of the state's position, we need not consider what evidence would be sufficient to establish a sale or an agreement to sell drugs. We do not address that question. Specifically, in this case, we do not decide whether direct evidence of a specific agreement with a specific buyer is required to establish ORS 475.900(1)(b)(A).

an enhanced sentence as a commercial drug offense under ORS 475.900(1)(b).[12] *Villagomez*, 281 Or App at 40-41.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for resentencing.

---

[12] As the Court of Appeals determined, defendant's sentence for his delivery conviction is independently supported by the jury's finding that defendant delivered a "substantial quantity" of methamphetamine under ORS 475.900 (1)(a)(C). *Villagomez*, 281 Or App at 40-41.